**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **KATHALEEN ANDRUS DEES** | § | |
| | § | |
| **V.** | § | |
| | § | **A-11-CA-190 LY** |
| **MICHAEL J. ASTRUE,** | § | |
| **COMMISSIONER OF THE** | § | |
| **SOCIAL SECURITY ADMINISTRATION** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATED MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Original Complaint seeking reversal of the final decision of the Social Security Administration (Clerk's Doc. No. 3); Plaintiff's Brief in Opposition to the Commissioner's Decision (Clerk's Doc. No. 14); Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 17).; and Plaintiff's Reply Brief (Clerk's Doc. No. 18). Also before the Court is the Social Security record filed in this case (Cited as "Tr.").

The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

Plaintiff Kathaleen Dees appeals from the determination that she is not disabled and presents two issues for review: (1) whether the Administrative Law Judge (ALJ) properly determined Dees's mental residual functional capacity; and (2) whether the ALJ properly reconciled any conflict between the vocational expert's testimony and the Dictionary of Occupational Titles.

## I.      General Background

Kathaleen Dees filed an application for supplemental security income (SSI) on December 10, 2007.  After her claim was initially denied on March 7, 2008, and again on reconsideration on August 15, 2008, Dees requested an administrative hearing.   Dees and her non-attorney representative had a hearing before administrative law judge (ALJ) Roy Richardson on July 20, 2009, and Irene Gray testified as a vocational expert (VE).  On October 13, 2009, the ALJ issued an unfavorable decision and found Dees not disabled.  Dees requested review by the appeals council, which was denied by routine notice on November 24, 2010.  Dees has exhausted her administrative remedies and now seeks judicial review of the administrative proceedings under 42 U.S.C. § 405(g).

## II.      Administrative Law Judge's Findings

The ALJ went through the five-step sequential evaluation process to determine whether Dees was disabled.  At the first step, he determined that Dees had not engaged in substantial gainful activity since her application date, December 10, 2007.  Tr. 14.  He found that she suffered from three severe impairments: fixation of the right clavicle, right hand weakness, and vertigo.  *Id.*  She did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, so he proceeded to determine her residual functional capacity (RFC).  *Id.*

First, the ALJ listed her physical limitations.  The ALJ determined that Dees could lift or carry ten pounds frequently and 20 pounds occasionally, stand or walk 6 hours in an 8-hour day, and sit 6 hours in an 8-hour workday.  *Id.*  She could also push or pull the same weights.  *Id.*  She should also avoid climbing and only occasionally balance and reach overhead.  *Id.*  She should avoid working at unprotected heights or around dangerous machinery, and she should not operate a motor

vehicle. *Id.*  The ALJ also identified Ms. Dees' mental limitations:  She can "understand, remember, and carry out routine step instructions and respond appropriately to supervisors and coworkers in jobs that do not require independent decision making."  *Id.*  But she should only work "where interpersonal contact is only incidental to work performance."  *Id.*

After providing Dees's RFC, the ALJ discussed the evidence he used to determine her RFC before determining whether she could perform her past work.  Dees had a motorcycle accident in September 2007, and she broke her clavicle and lacerated her scalp. *Id.* at 15.  She had an X-ray in June 2008, which supported the limitations that she cannot lift or carry more than ten pounds frequently or twenty pounds occasionally, and she is unable to "work with more than occasional overhead reaching." *Id.* at 16.  After the accident, Dees went to a psychologist, Julia Lou, who evaluated her in March of 2008 and found symptoms "consistent with post traumatic stress disorder, panic disorder with agoraphobia, and major depressive disorder resulting in social, occupational, and psychological functioning." *Id.* at 15.  Dr. Lou determined Dees's global assessment functioning (GAF) score to be 53, which indicates moderate to serious symptoms. *Id.*

Because Dees suffers from depressive symptoms and anxiety, she cannot perform "more than incidental interaction with coworkers and the public." *Id.* at 16.  Her GAF scores improved with limited treatment, and she has exhibited functional abilities, such as memory, that exceed her GAF scores. *Id.*  While being treated for cellulitis in September 2008, she did not "report or exhibit exacerbated depressive symptoms," and although she has exhibited mild anxiety, she did not exhibit chronic head pain, balance deficits, or emotional liability. *Id.*  The ALJ concluded that during her first hospitalization in June 2008, Dees exhibited depression, anxiety, nervousness, and tearfulness,

but these symptoms were associated with her physical condition and improved over time and with medication.  *Id.*

In determining Dees's physical RFC, the ALJ sided with her over the State Agency physician and held that Dees can only occasionally reach overhead, she cannot climb ladders, and that she can only occasionally balance or climb ramps or stairs.  *Id.* at 17.  For Dees's mental RFC, the ALJ agreed with the State Agency physician that she has moderate limitations in social functioning and concentration, persistence, and pace, but that her depression significantly improved and only placed mild limitations on her daily living.  *Id.*

The ALJ proceeded to determine that Dees could not perform her relevant past work: fast food worker, housekeeper/cleaner, and food demonstrator.  *Id.*  He then classified her as an English-speaking, younger individual with a high school education.  *Id.*  After considering Dees's "age, education, work experience, and residual functional capacity," she could perform jobs that exist in significant numbers in the national economy.  *Id.*

Because Dees did not have the ability to perform the full range of light work, the ALJ had a vocational expert (VE) determine whether her additional limitations prevented her from performing jobs in the national economy.  *Id.* at 18.  The ALJ asked the VE to describe representative occupations that she could perform.  The VE testified that with Dees's age, education, work experience, and her RFC, she could work as a cleaner or polisher, a small parts assembler, or a glass products waxer.  *Id.*  As these jobs exist in significant numbers in the national and local economies, the ALJ found her "not disabled."  *Id.*

III.    **Analysis**

A.    **Administrative Definitions and Standards**

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To determine if a claimant is able to engage in "substantial gainful activity" (and therefore if he is disabled) the Social Security Commissioner uses a five-step analysis:

1.    a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

2.    a claimant will not be found to be disabled unless he has a "severe impairment";

3.    a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

4.    a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

5.    if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. § 404.1520.  A finding of disability or no disability at any step is conclusive and terminates the analysis.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  The claimant has the burden of proof for the first four steps; at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).  Then, if the Commissioner "fulfills [his] burden of pointing out potential alternative employment, the burden . . . shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (citation omitted).

**B.      Standard of Review**

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner correctly applied the relevant legal standards. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence is more than a scintilla of evidence but less than a preponderance-in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Id.* at 174. However, the Court cannot reconsider the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the Court finds substantial evidence to support the decision, the Court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); 42 U.S.C. § 405(g).

**C.      Dees's Objections to the ALJ's Determinations**

*1.       Dees claims that the ALJ improperly determined her mental RFC.*

First, Dees alleges that the ALJ failed to apply the appropriate legal standard. She claims that the ALJ failed to include post traumatic stress disorder, panic disorder, and major depressive disorder within her severe impairments. Dees contends that the ALJ simply cited the standard from

*Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), but he did not apply that standard to the above impairments.

Dees also alleges that the ALJ failed to rate her functional loss caused by her mental ailments. She argues that the applicable regulations require the ALJ to perform a function-by-function assessment when determining mental RFC, and in her case, the ALJ did not do so. The regulations require that the agency "must follow a special technique at each level in the administrative review process." 20 C.F.R. § 404.1520a(a). To determine a claimant's mental functional limitations, the agency must rate the mental impairment in four areas: (1) activities of daily living, (2) social functioning, (3) concentration, persistence, and pace, and (4) episodes of decompensation. *Id.* §§ 404.1520a(b)(2), (c)(3). In his decision, the ALJ must include findings for each of these categories. *See* 20 C.F.R. § 404.1520a(e)(4) ("The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.").

Dees acknowledges that the ALJ was not required to complete a "Psychiatric Review Technique Form" (PRTF), but she claims that the ALJ was required to include a specific finding as to the degree of limitation in each of the four functional areas. The ALJ agreed with the State Agency physician that Dees has moderate limitations in social functioning and concentration, persistence, and pace, but that her depression significantly improved and only placed mild limitations on her daily living. Tr. 17. Further, he found that Dees could perform "all activities of daily living without assistance." Tr. 16. Therefore, the only category the ALJ did not make an explicit finding for was decompensation. Dees, however, does not indicate any place in the record evidence which demonstrates that Dees ever suffered from episodes of decompensation.

Dees bears the burden of showing any error committed by the ALJ and proving it is harmful, thus requiring remand. *Shinseki v. Simmons*, 556 U.S. 396 (2009).  Even assuming the ALJ did err in failing to evaluate her episodes of decompensation resulting from post traumatic stress disorder, panic disorder, and major depressive disorder under the psychiatric review technique, Dees has failed to demonstrate the error was harmful, because she has pointed to no evidence that her ailments were severe or that her ability to work was limited due to mental illness.  As the record does not indicate that she suffered episodes of decompensation, Dees was not harmed by the ALJ failing to make a specific finding.

Next, Dees contends that the ALJ failed to include a sufficient narrative considering her ability to perform work in an ordinary setting.  Rather, she claims he only made a conclusory statement that she "would be precluded from performing more than simple tasks or tasks that required more than incidental interaction with coworkers and the public." Tr. at 16.  She argues that the ALJ did not fully discuss or support his findings.  Unlike the four categories of mental impairment, the agency is not required to make specific findings with respect to a claimant's memory or ability to work with others.  The ALJ determined Dees's ability to understand, remember, and carry out instruction, work with others, and interact with the public.  Dees does not appear to dispute the ALJ's determinations, which demonstrably limit Dees's mental RFC; rather, she argues that the ALJ did not provide a sufficient narrative discussion.  But the ALJ's findings provide support for his determinations of her mental limitations.  He reviewed her record and explained how her mental health improved in the time since her accident and how time and medication have reduced the severity of her symptoms.  Although in her first hospitalization after the accident she presented as "depressed, anxious, nervous, and tearful," she did not have the same symptoms in her later visits

as her physical health improved and she started taking anti-depressant medication.  Tr. 16.  Not only does Dees fail to demonstrate that the ALJ committed error by providing insufficient detail, but she also fails to demonstrate that the evidence in the record justifies a different mental RFC.

Finally, Dees contends that the ALJ determined her mental RFC without any support beyond his own lay assessment of Dees's medical records.  She claims that the ALJ accepted some of the opinions of the State Agency Medical Consultants (SAMC), but rejected the SAMC's opinions on Dees's ability to understand, remember, and carry out detailed instructions.  And she claims that the ALJ rejected those opinions without expert medical advice.  However, the ALJ described the evidence that he used to make his determinations, and he did not rely on simple raw data.  He explained how Dees showed improvement after her accident, and that she had an "above average memory" in July of 2008 and could perform "all activities of daily living without assistance," based on medical observations.  Tr. 16.  The record supports the ALJ's determinations, and he did not rely on raw data without a health expert's interpretation.  Rather, he relied on medical observations.  Therefore, Dees cannot demonstrate reversible error.

2.     *Alleged conflict between the VE's testimony and the DOT regarding ability to reach.*

Dees argues that the VE incorrectly testified that the jobs were consistent with Dees's RFC.  According to the Dictionary of Occupational Titles ("DOT"), the atomizer assembler position requires frequent reaching, and the cleaner and polisher positions require constant reaching.

Dees contends that the VE's testimony that Dees could perform these occupations requiring "frequent" or "constant" reaching is inconsistent with the ALJ's determination that Dees could only occasionally reach overhead.  Dees notes that the DOT defines "reaching" as "extending the hands and arms in *any* direction."  Plaintiff's Brief at 13.  Therefore, Dees argues that the VE contradicted

the DOT when she identified positions that require frequent or constant reaching.  But this ignores the ALJ's limitation of her limitation: she can only occasionally reach *overhead*.  And the DOT does not identify which direction the jobs require an employee to reach.

This is not a direct conflict, and the ALJ did not err by relying on the VE's testimony that she could perform the positions, despite her reaching limitation.  The VE testified that the jobs were consistent with an occasional overhead reaching limitation.  Tr. 37–38.  In fact, the VE testified that even with a more severe limitation, Dees could still perform the waxer position.  Tr. 39–40.  Without a direct conflict, the ALJ can rely on the VE's testimony.  The Fifth Circuit has upheld an ALJ's decision when the claimant argued that the VE's testimony had an inferential conflict with the DOT.  *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000).  Dees has not demonstrated that the positions identified by the VE require more than occasional overhead reaching, and therefore she cannot demonstrate error.

## IV.     Recommendation

Based upon the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Judge **AFFIRM** the decision of the Commissioner in this case and **ENTER JUDGMENT** in favor of the Defendant.

## V.      Warnings

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–153 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 31st day of May, 2012.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE